WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>James Bond,<br><br>    Defendant. | No. CR-23-01238-001-PHX-KML<br><br>**ORDER** |

    The government charged defendant James Bond with various child exploitation crimes based on conduct he allegedly committed in Colombia and elsewhere. The case is currently pending trial, and Bond has moved to dismiss all 37 counts in the indictment for lack of venue. (Doc. 73.) His motion is denied.

**I.    The Indictment**

    The operative grand jury indictment in this case was issued in the District of Arizona on August 29, 2023. (Doc. 3.) The court issued an arrest warrant the next day. (Doc. 8.) Later that week, the government moved to unseal the arrest warrant to provide it to Interpol and the State Department because Bond was then "traveling and likely residing in Asia." (Doc. 9.) The court granted that request. (Doc. 10.)

    Nearly three months later, Bond was arrested in the Southern District of Florida. (Doc. 11.) He returned to the United States voluntarily via the Miami airport "due to wanting to resolve his warrant." (Doc. 73 at 6.)

    The indictment contains 37 counts related to Bond's alleged sexual exploitation of

children in Colombia and elsewhere. The counts are broadly grouped as follows:

- Counts 1–14 allege extraterritorial sex trafficking of a minor and engaging in illicit sexual conduct in foreign places. Each count alleges Bond "travel[led] in foreign commerce, to Colombia" but was "a resident of the District of Arizona." (Doc 5 at 3.) Each count also references 18 U.S.C. § 3238. (Doc. 5 at 2–6.)
- Counts 15–20 allege production of child pornography for importation to the United States in violation of 18 U.S.C. §§ 2251(c), 2251(e), and 3238. Like counts 1–14, each count also alleges Bond was "a resident of the district of Arizona." (Doc. 5 at 6.) These counts also allege that the child pornography Bond produced was transported "into the District of Arizona[.]" (Doc. 5 at 7.)
- Counts 21–37 allege Bond advertised child pornography, benefitted financially from trafficking in persons, and distributed child pornography. Each of these counts alleges that Bond's conduct occurred within the District of Arizona and elsewhere. (Doc. 5 at 7–9.)

Bond moved to dismiss the indictment for improper venue, arguing all his alleged conduct occurred within the Republic of Colombia, he was not first brought to or arrested in Arizona, and Arizona is not his last known residence. (Doc. 73.) The government responded. (Doc. 76.)

## II. Venue for Extraterritorial Crimes (Counts 1–20)

The indictment charges Bond with sex trafficking of minors in foreign commerce in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), 1591(c), 1596(a)(1) (Counts 1–8), engaging in illicit sexual conduct in foreign places in violation of 18 U.S.C. §§ 2423(c) and 2423(e) (Counts 9–14), and producing child pornography for importation to the United States in violation of 18 U.S.C. §§ 2251(c), and 2251(e) (Counts 15–20). (Doc. 5.) These are all extraterritorial crimes for which U.S. nationals (and others, for § 2251(c) charges) may be prosecuted even when the conduct occurs in a foreign country. *See* 18 U.S.C. § 1596(a)(1) (establishing extraterritorial jurisdiction for trafficking offenses charged under 18 U.S.C. § 1591); *United States v. Pepe*, 895 F.3d 679, 683–90 (9th Cir. 2018) (discussing

history of extraterritorial jurisdiction under 18 U.S.C. § 2423(c)); *United States v. McVicker*, 979 F. Supp. 2d 1154, 1173–74 (D. Or. 2013) (discussing extraterritorial application of § 2251(c)).

For crimes like these that are not alleged to have been committed in any state, "the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2, cl. 3. In 18 U.S.C. § 3238, which the indictment cites in each of Counts 1-20 (Doc. 5 at 1), Congress gave that direction:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender . . . or if no such residence is known the indictment or information may be filed in the District of Columbia.

Bond argues that because he was arrested in Miami and "has not resided in Arizona for some time[,]" 18 U.S.C. § 3238 means venue lies elsewhere. (Doc. 73 at 6–13.) His motion attaches records dating back to 2011 suggesting he may have lived in other states like Hawaii, California, Florida, and Nevada. (Doc. 73-1.) In response, the government argues the court should not consider evidence extrinsic to the indictment in deciding a pretrial motion to dismiss for lack of venue, but also attaches records suggesting Bond considered Arizona his state of residence through at least October 2022.[1] (Docs. 76 at 4, 80 at 31.)

In considering a pretrial motion to dismiss based on venue like Bond's, a district court must presume the allegations in the indictment to be true and "should not consider evidence not appearing on the face of the indictment." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (citation and quotation marks omitted); *see also United States v.*

---

[1] Although neither party references the Southern District of Florida pretrial services report, Bond reported an Arizona address as his residence. (Doc. 13 at 1.) He told the pretrial services officer he relocated to Arizona in 1998 and had resided with his aunt in Scottsdale ever since, "for approximately 25 years[,]" with the exception of a year in California in 2018. (Doc. 13 at 2). In a case both parties cited, a district court considered statements to pretrial services in determining the defendant's last known residence for venue purposes. *See United States v. Holmes*, 672 F. Supp. 2d 739, 749–50 (E.D. Va. 2009).

*Biden*, 728 F. Supp. 3d 1054, 1111 (C.D. Cal. 2024) (applying *Jensen*). Under this standard, Bond's indictment sufficiently supports venue in the District of Arizona under 18 U.S.C. § 3238's last known residence provision by alleging Bond committed the crimes charged in Counts 1–20 outside the United States (specifically in Colombia, for Counts 1–14) as "a resident of Arizona." (*See* Doc. 5 at 1–7.) These allegations mean no venue defect is apparent on the face of the indictment. *Cf. United States v. Ghanem*, 993 F.3d 1113, 1120 (9th Cir. 2021) (holding defect apparent where government argued venue lay under § 3238's "first brought" provision but indictment alleged only that defendant was "currently located" in the district).

To the extent Bond makes a legal argument that 18 U.S.C. § 3238's "arrested" clause should apply instead of its "last known residence" clause, that argument is rejected. (Doc. 73 at 8.) When an indictment is filed "before the offender is first brought into any district," as the indictment was here, § 1328's "last known residence" clause applies. *See United States v. Layton*, 855 F.2d 1388, 1410–11 (9th Cir. 1988); *United States v. Hilger*, 867 F.2d 566, 568 (9th Cir. 1989). This holds true even if the defendant is later arrested in a district other than where the indictment has been filed. *Layton*, 855 F.2d at 1411; *cf. Ghanem*, 993 F.3d at 1121–22 (noting § 3238's "first brought" provision does not apply where defendant is not in custody in connection with the charged offense when he enters the United States). The government (correctly) believed Bond to be outside the United States when the indictment was filed and it was filed before his arrest, so § 3238's "last known residence" provision—which is supported by the grand jury's allegation that Bond was an Arizona resident—applies.

Because the motion to dismiss was filed pretrial and the indictment facially alleges venue in the District of Arizona, the court does not consider Bond's exhibits—which in any event almost entirely pre-date the government's evidence that Bond lived in Arizona when he was in the United States. (*Compare* Doc. 73-1 *with* Doc. 80.)[2] Legally, even if

---

[2] Bond included one law enforcement report suggesting that he provided a shipping address in Miami to Cash App on February 5, 2023. (Doc. 73-1 at 15.) But the prosecution's exhibits suggested Bond consistently provided the Scottsdale address on official forms and subscriptions in a similar timeframe (*see, e.g.*, Doc. 80 at 31), and the government was not

Bond came and went from Arizona periodically, "occasional but persistent occupancy" is enough to establish a last known residence. *United States v. Minns*, 917 F. Supp. 488, 491 (S.D. Tex. 1994); *United States v. Ross*, 439 F.2d 1355, 1359 (9th Cir. 1971) (venue lay under 18 U.S.C. § 3238 despite defendant's "off and on" residence in district). And if he wants to contest the facts underlying venue as his motion implies, Bond may put the question to the jury by requesting a venue instruction. *United States v. Lukashov*, 694 F.3d 1107, 1112, 1120 (9th Cir. 2012). Bond's motion to dismiss based on a lack of venue for the extraterritorial crimes (Counts 1–20) is therefore denied.

### III. Venue for "in the District of Arizona" Crimes (Counts 21–37)

Bond's venue motion does not differentiate between the extraterritorial crimes alleged in Counts 1–20 and those alleged to have been committed "in" or "within" the District of Arizona in Counts 15–37.[3] But to the extent his general argument that there is no connection between any of the crimes alleged and the District of Arizona also challenges venue for Counts 21–37, the motion is denied as to these counts too.

Like for the extraterritorial crimes, the court may only consider the indictment and must take its allegations as true. *United States v. Mendoza*, 108 F.3d 1155, 1156 (9th Cir. 1997). So taken, the grand jury's allegations that Bond committed the crimes alleged in Counts 15–37 "in" or "within" the District of Arizona sufficiently state venue. *See id.* (indictment alleging continuing crime occurred "within the Western District of Washington" stated venue). The government argues, citing cases, that Bond's use of Arizona-based website hosting and credit card processing companies supports the venue allegation, as does agents' downloading of the alleged child pornography in Arizona. (Doc. 76 at 5–6 (citing *United States v. Chi Tong Kuok*, 671 F.3d 931, 938 (9th Cir. 2012);

---

required to exhaustively research Bond's other addresses before indictment. *See United States v. Minns*, 917 F. Supp. 488, 490 (S.D. Tex. 1994) ("A prolonged search of past and possible addresses for [the defendant] in the United States would impose needless expense on the government when it had multiple representations and independent evidence of Texas residency before he went abroad."). In any event, resolving a factual conflict on venue is for the jury, not the court. *See United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012).

[3] Counts 15–20 contain both extraterritorial and domestic allegations, so both parts of the court's analysis apply to these crimes.

*McVicker*, 979 F. Supp. 2d at 1177).) Bond cites no cases to the contrary and the court can find none.

Accordingly,

**IT IS ORDERED** denying Bond's motion to dismiss for improper venue (Doc. 73).

Dated this 26th day of March, 2025.

Honorable Krissa M. Lanham
United States District Judge